# 22-4219

# United States Court of Appeals

### *for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

DIETRICH O'BRIAN SARRATT,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

## SUPPLEMENTAL BRIEF OF APPELLANT

James W. Kilbourne, Jr.
ALLEN STAHL & KILBOURNE, PLLC
20 Town Mountain Road, Suite 100
Asheville, North Carolina 28801
(828) 412-4024

*Counsel for Appellant*



CP COUNSEL PRESS      (800) 4-APPEAL • (JOB #809511)

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................iii

SUPPLEMENTAL STATEMENT OF SUBJECT MATTER AND
    APPELLATE JURISDICTION........................................................ 1

SUPPLEMENTAL ISSUE PRESENTED FOR REVIEW ........................ 3

SUPPLEMENTAL STATEMENT OF FACTS AND
    STATEMENT OF THE CASE ........................................................ 3

SUMMARY OF THE ARGUMENT .......................................................... 5

ARGUMENT ............................................................................................ 5

    I.    The Career Offender Enhancement Was Not Properly
        Applied ............................................................................ 5

        A.    Standard of Review ................................................. 6

        B.    United States Sentencing Guidelines ............................ 7

        C.    The application of *United States v. Campbell* to
               Mr. Sarratt's predicate offenses demonstrates
               that they would not qualify as crimes of
               violence ........................................................... 8

               1.    This Court decides *Campbell* ................................ 8

               2.    The Defendants prior conviction for
                    Robbery under the enumerated offense
                    clause.................................................. 12

               3.    The Defendants predicate convictions for
                    robbery with do not qualify under the
                    elements clause.................................... 16

               4.    North Carolina's presumption prevents
                    robbery with a dangerous weapon from
                    being a crime of violence ....................24

5.   North Carolina's Robbery with a dangerous weapon does not require *mens rea* so it is not a crime of violence ....................... 26

D.   The timing of the Defendant' predicate conviction should prevent their inclusion under U.S. Sentencing Guidelines Manual §4A1.2(e) (2018) .................................................................... 27

1.   Specific Offenses ................................. 31

a.   First Offenses for Breaking and Ending in 2001 ........................................... 32

b.   Firearms Offenses (2002) ......................... 33

c.   Common Law Robbery (2002) ................... 35

d.   First Aggravated Robbery (2002) ............. 37

e.   Second Aggravated Robbery (2002) .......... 38

f.   Firearms and Arrest Offenses (2011) ........ 40

g.   Remaining Offenses and Analysis ............ 42

E.   The errors made in applying the career offender enhancement in light of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S. Sentencing Guidelines Manual §4A1.2(e) (2018) were plain ......................................... 43

CONCLUSION ..................................................... 46

TABLE OF AUTHORITIES

Page(s)

Cases:

*Anders v. California,*
  386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) ...................... 2, 5

*Elonis v. United States,*
  575 U.S. 723, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015) ........................ 26

*Leocal v. Ashcroft,*
  543 U.S. 1, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004) .......................... 27

*Long Island Care at Home, Ltd. v. Coke,*
  551 U.S. 158, 127 S. Ct. 2339, 168 L. Ed. 2d 54 (2007) ...................... 11

*Mathis v. United States,*
  579 U.S. 500, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016) ................... 19

*Molina-Martinez v. U.S.,*
  578 U.S. 189, 136 S. Ct. 1338, 194 L. Ed. 2d 444 (2016) ... 43, 44, 45, 46

*Peugh v. United States,*
  569 U.S. 530, 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013) ...................... 45

*State v. Cole,*
  199 N.C. App. 151, 681 S.E.2d 423 (2009)........................................... 17

*State v. Covington,*
  273 N.C. 690, 161 S.E. 2d 140 (1968) .................................................. 17

*State v. Curry,*
  203 N.C. App. 375, 692 S.E.2d 129 (2010)........................................... 17

*State v. Everette,*
  111 N.C. App. 775, 433 S.E.2d 802 (1993)........................................... 25

*State v. Gibbons,*
  303 N.C. 484, 279 S.E.2d 574 (1981) ................................................... 17

*State v. Glover,*
  233 N.C. App. 788, 759 S.E.2d 711 (2014)........................................... 14

*State v. Joyner,*
  312 N.C. 779, 324 S.E.2d 841 (1985) ............................................. 24, 25

iii

*State v. Marshall*,
  188 N.C. App. 744, 656 S.E.2d 709 (2008)...........................................25

*State v. McDonald*,
  130 N.C. App. 263, 502 S.E.2d 409 (1998)...........................................14

*State v. Moore*,
  279 N.C. 455, 183 S.E.2d 546 (1971) ...................................................21

*State v. Pratt*,
  161 N.C. App. 161 (2003) .....................................................................21

*State v. Sipes*,
  233 N.C. 633, 65 S.E.2d 127(1951) .....................................................14

*State v. Smith*,
  305 N.C. 691, 292 S.E.2d 264 (1982) ..................................................14

*State v. Thompson*,
  297 N.C. 285, 254 S.E.2d 526 (1979) ............................................24, 25

*State v. White*,
  322 N.C. 506, 369 S.E.2d 813 (1988) ..............................................17-18

*Stinson v. United States*,
  508 U.S. 36, 113 S. Ct. 1913, 123 L. Ed. 2d 598 (1993) ................10, 11

*Taylor v. United States*,
  495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990) ....................19

*United States v. Burns-Johnson*,
  864 F.3d 313 (4th Cir. 2017) ..........................................................19, 27

*United States v. Campbell*,
  22 F.4th 438 (4th Cir. 2022).......................................................*passim*

*United States v. Davis*,
  72 F.4th 605 (4th Cir. 2023), *reh'g granted and op. withdrawn*,
  2023 U.S. App. LEXIS 19767 (August 1, 2023).....................................8

*United States v. Davis*,
  720 F.3d 215 (4th Cir. 2013) ...................................................28, 32, 39

*United States v. Dixon*,
  805 F.3d 1193 (9th Cir. 2015) .............................................................27

*United States v. Doctor*,
   842 F.3d 306 (4th Cir 2016) ............................................................ 27

*United States v. Ford*,
   88 F.3d 1350 (4th Cir. 1996) ..................................................... 44, 46

*United States v. Garcia-Lagunas*,
   835 F.3d 479 (4th Cir. 2016) ........................................................ 46

*United States v. Gattis*,
   877 F.3d 150 (4th Cir. 2017) .................................................... 13, 14

*United States v. Green*,
   436 F.3d 449 (4th Cir. 2006) ......................................................... 6

*United States v. Groves*,
   65 F.4th 166 (4th Cir. 2023) .......................................................... 8

*United States v. Johnson*,
   953 F.2d 110 (4th Cir. 1991) ........................................................ 35

*United States v. King*,
   673 F.3d 274 (4th Cir. 2012) ........................................................ 10

*United States v. Maxwell*,
   285 F.3d 336 (4th Cir. 2002) ..................................................... 43-44

*United States v. Miller*,
   75 F.4th 215 (4th Cir. 2023) ..................................................... 8, 15

*United States v. Montes-Flores*,
   736 F.3d 357 (4th Cir. 2013) ........................................................ 20

*United States v. Olano*,
   507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) ..................... 43

*United States v. Pittman*,
   728 F. App'x 197 (4th Cir. 2018) ................................................... 20

*United States v. Riley*,
   856 F.3d 326 (4th Cir. 2017) ......................................................... 7

*United States v. Saint Louis*,
   889 F.3d 145 (4th Cir. 2018) ......................................................... 6

*United States v. Salmons,*
   873 F.3d 446 (4th Cir. 2017) ................................................................ 19

*United States v. Simmons,*
   917 F.3d 312 (4th Cir. 2019) ......................................................... 10, 19

*United States v. Taylor,*
   ___ U.S. ___, 142 S. Ct. 2015, 213 L. Ed. 2d 349 (2022) .......... 20, 21, 23

*United States v. Ward,*
   972 F.3d 364 (4th Cir. 2020) .................................................................. 9

**Statutes & Other Authorities:**

18 U.S.C. § 841(c) ................................................................................... 12

18 U.S.C. § 924(c) .................................................................................. 1, 6

18 U.S.C. § 3231 ....................................................................................... 2

18 U.S.C. § 3553(a)(4) ........................................................................... 11

18 U.S.C. § 3553(b) ................................................................................ 11

18 U.S.C. § 3742 ....................................................................................... 2

21 U.S.C. § 841 ....................................................................................... 1, 6

21 U.S.C. § 841(a)(1) ............................................................................... 8

21 U.S.C. § 846 ....................................................................................... 1, 6

21 U.S.C. § 851 ......................................................................................... 4

26 U.S.C. § 5845(a) .......................................................................... 12, 35

28 U.S.C. § 994(h) .................................................................................... 7

28 U.S.C. § 1291 ....................................................................................... 2

Fed. R. Crim. P. 52(b) ................................................................. 43, 44, 45

N.C.G.S. § 14-2.5 ................................................................................... 15

N.C.G.S. § 14-33(c) ............................................................................... 40

N.C.G.S. § 14-223 ................................................................................. 40

N.C.G.S. § 14-269(c) ....................................................................... 34, 40

N.C.G.S. § 14-415.1(a) ....................................................................... 34, 37, 40

N.C.G.S. § 14-52 ..................................................................................... 37, 38

N.C.G.S. § 14-54(a) ....................................................................................... 33

N.C.G.S. § 14-54(b) ....................................................................................... 32

N.C.G.S. § 14-87 ..................................................................................... 16, 26

N.C.G.S. § 14-87(a) ............................................................................... *passim*

N.C.G.S. § 14-87.1 ........................................................................................ 35

N.C.G.S. § 14-223 ......................................................................................... 40

N.C.G.S. § 14-269(c) ............................................................................... 34, 40

N.C.G.S. § 14-415.1(a) ............................................................... 34, 37, 38, 40

N.C.G.S. § 15A-928 ...................................................................................... 41

U.S.S.G. § 1B1.3 .......................................................................................... 31

U.S.S.G. § 4A1.1 .......................................................................................... 28

U.S.S.G. § 4A1.1(a) ...................................................................................... 32

U.S.S.G. § 4A1.1(b) ...................................................................................... 32

U.S.S.G. § 4A1.1(c) ...................................................................................... 32

U.S.S.G. § 4A1.2 ............................................................................... 29, 30, 31

U.S.S.G. § 4A1.2(a)(1) .................................................................................. 29

U.S.S.G. § 4A1.2(a)(2) .................................................................................. 29

U.S.S.G. § 4A1.2(d) ...................................................................................... 33

U.S.S.G. § 4A1.2(d)(2) .................................................................................. 30

U.S.S.G. § 4A1.2(d)(2)(C) ............................................................................ 33

U.S.S.G. § 4A1.2(e) ............................................................................... *passim*

U.S.S.G. § 4B1.1 ................................................................................... *passim*

U.S.S.G. § 4B1.1(a)(3) .................................................................................... 7

U.S.S.G. § 4B1.2 ................................................................................... *passim*

vii

U.S.S.G. § 4B1.2(a) ............................................... 12, 16, 20, 22, 23

U.S.S.G. § 4B1.2(a)(1) ............................................................... 18

U.S.S.G. § 4B1.2(a)(2) ........................................................ *passim*

U.S.S.G. § 4B1.2(b) ..................................................... 9, 11, 18, 23

U.S.S.G. § 4B1.2(c) ............................................................. 28, 29

U.S.S.G., Amd. 798 ............................................................. 12, 13

American Heritage College Dictionary, 3rd ed ...................................... 22

Black's Law Dictionary, 11th ed ............................................................. 22

Case No. 22-4219
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,
Appellee
v.
DIETRICH O'BRIAN SARRATT
Defendant/Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
_____

APPELLANT'S SUPPLEMENTAL BRIEF FOR DEFENDANT/
APPELLANT DIETRICH O'BRIAN SARRATT
_____

SUPPLEMENTAL STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION

This appeal arose as the result of proceedings in which the
Appellant was convicted of Conspiracy to Distribute and to Possess with
Intent to Distribute crack cocaine in violation of 21 U.S.C. §846 ("Count
One"), Possession with Intent to Distribute cocaine and crack cocaine in
violation of 21 U.S.C. §841 ("Count Four"), and Possession of a Firearm
in Furtherance of Drug Trafficking in violation of 18 U.S.C. §924(c)
("Count Five"). Subject matter jurisdiction in the United States District

1

Court for the Western District of North Carolina was based on 18 U.S.C. §3231.

On March 1, 2022, the Defendant was found subject to sentencing as a career offender under U.S.S.G. §4B1.1 and was sentenced to 240 months incarceration on Count One, 240 months concurrent on Count Four, and 60 months consecutive on Count Five. JA135, JA94. Judgment was filed on March 24, 2022. JA135. A Notice of Appeal from the judgment was timely filed by the Defendant on April 1, 2022. JA142. This appeal is a direct appeal of the Judgment. The United States Court of Appeals has jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742.

On August 9, 2022, counsel for the Appellant filed a Brief in accordance with *Anders v. California*, 386 U.S. 739, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (Dkt. #16). On September 10, 2022, the United States filed notice that no responsive brief would be filed (Dkt. #20). The Defendant filed two letters, which the Court considered as *Anders* pro se briefs (Dkt. #22, 23). On September 7, 2033, the Court entered an order directing the filings of supplemental briefs (Dkt. #24).

## SUPPLEMENTAL ISSUE PRESENTED FOR REVIEW

I.   Whether the district court properly applied the career offender enhancement in light of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S. Sentencing Guidelines Manual § 4A1.2(e) (2018)

### SUPPLEMENTAL STATEMENT OF FACTS AND STATEMENT OF THE CASE

In addition to the Statement of Facts and Statement of Case presented in the initial Anders brief, the following specific information supports this Supplemental Brief:

The Defendant was born on October 10, 1984, and turned 18 on October 10, 2002. JA178. He had multiple prior offenses discussed below.

The indictment for Count One indicated that the conspiracy commenced in or about 2018, but it is silent as to the date of the Defendant's commencement of the instant offense. It was based on the statements of multiple confidential informants during an extended investigation. According to one informant, the Defendant sold cocaine base on three or four occasions during 2019. JA181, ¶13. A second informant told law enforcement that the Defendant sold powder cocaine on numerous occasions in 2019 and 2020. JA181, ¶14. A third informant that the Defendant was regularly selling crack cocaine from an

3

apartment in Gastonia since 2017, despite the fact that the Defendant was serving an active state sentence in prison from January 13, 2017, to January 15, 2019. JA181, at ¶15.

Counts Four and Five was based on an unrelated random encounter with law enforcement.  On July 4, 2020, the Gastonia Police discovered controlled substances and firearms at an apartment and arrested Mr. Sarratt. JA183, ¶28.   The Court also considered additional conduct which occurred between January and July of 2020. JA182, ¶¶16, 17; JA183, ¶¶21, 25, 29.

In the Corrected Plea Agreement (JA145) both parties stipulated that the Defendant did not have any prior controlled substances convictions for the purposes of 21 U.S.C. §851 and agreed to the drug quantities for the purposes of sentencing.  The plea agreement is silent as to the date of offense.

The Court based the Defendant's sentence on the presentence report finding the Defendant to be a Career Offender under the guidelines. JA100.

SUMMARY OF THE ARGUMENT[1]

Mr. Sarratt's sentence should be vacated because the district court failed to properly apply the career offender enhancement in light of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S. Sentencing Guidelines Manual §4A1.2(e) (2018). The *Campbell* decision prevents the finding that the sentences for Robbery and Robbery with a Dangerous Weapon are crimes of violence under the guidelines. The district court further failed to find sufficient facts for both prior predicate offenses under U.S.S.G. §4A1.2(e), which restricts the interval of prior predicate offenses.

ARGUMENT

I.   The Career Offender Enhancement Was Not Properly Applied.

This Court requested supplemental briefing on the question of whether the district court properly applied the career offender

---

[1] As the undersigned originally filed a brief under *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L.Ed.2d 493 (1967), which requires that counsel a brief "referring to anything in the record that might arguably support the appeal." *Id.*, 386 U.S. at 744, 87 S. Ct. at 1400, 18 L.Ed.2d at 498. The courts are unclear about the role of counsel in a supplemental brief when an Anders was originally filed. As an officer of the Court, I have attempted to raise any arguments within the Court's supplement request which could support the Defendant's appeal.

enhancement in light of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S. Sentencing Guidelines Manual §4A1.2(e) (2018). *Campbell* and its implications are discussed in section C *supra*, while the application of U.S.S.G. §4A1.2(e) is discussed in Section D.

As a result of the career offender enhancement, the District Court imposed a sentence of 240 months concurrent incarceration for Conspiracy to Distribute and to Possess with Intent to Distribute Crack Cocaine in violation of 21 U.S.C. §846, and for Possession with Intent to Distribute Cocaine and Crack Cocaine in violation of 21 U.S.C. §841. JA135, JA94. The Court also imposed an additional 60 months consecutive for Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. §924(c). *Id.*

### A.    Standard of Review

In reviewing guideline determinations, this court reviews questions of law including interpretation of U.S.S.G. §4A1.2(e) *de novo. United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); *United States v. Saint Louis*, 889 F.3d 145, 158 (4th Cir. 2018). Likewise, the Fourth Circuit reviews "*de novo* whether a defendant's prior offense qualifies as a crime

of violence under the career offender guideline." *United States v. Riley*, 856 F.3d 326, 327-28 (4th Cir. 2017).

## B.    United States Sentencing Guidelines

Based on the requirements of 28 U.S.C. §994(h), the Sentencing Commission developed guidelines providing for an enhancement for offenders with certain multiple prior convictions.  Under United States Sentencing Guidelines §4B1.1(a)(3), a defendant is treated as a career offender for a crime of violence or a controlled substance offense if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

In this case, the court found the enhancement applied, and raised the Defendant's offense level to 37 (or a final offense level of 34 after reduction for acceptance of responsibility) with a criminal history category VI.  The court has requested supplemental briefing on the application of the career offender enhancement in light of *Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S.S.G. §4A1.2(e) (2018).

**C.    The application of *United States v. Campbell* to Mr. Sarratt's predicate offenses demonstrates that they would not qualify as crimes of violence.**

### 1.    *This Court decides* Campbell

In January 2022, this Court decided *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022),[2] holding that the commission of an attempted "controlled substance offense" under West Virgina law did not support a career offender sentencing enhancement. *Id*., at 441-49.  Mr. Sarratt was sentenced after *Campbell* was decided, but his final presentence report (JA176) and sentencing memorandum (JA84) were prepared before *Campbell* was decided.   The issues raised by *Campbell* were not previously addressed in his matter.

---

[2] This decision has been interpreted several times by this court in the last 22 months, none of which involved crimes of violence.  *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023) (holding that 21 U.S.C. §841(a)(1) does not criminalize [an] attempt such that an §841(a)(1) distribution offense would be categorically disqualified from being treated as a "controlled substance offense").  *United States v. Davis*, 72 F.4th 605, 622 (4th Cir. 2023), *reh'g granted and op. withdrawn*, 2023 U.S. App. LEXIS 19767 (August 1, 2023) (applying *Campbell* to the South Carolina controlled substance offense). *United States v. Miller*, 75 F.4th 215, 229 (4th Cir. 2023), *supra*.

The *Campbell* decision was based on a conflict between the language of the guidelines and their commentary. The definition of "controlled substance offense" in the Sentencing Guidelines incorporates any statute that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. §4B1.2(b) (2018). As the Court contrasted, "The Sentencing Commission's commentary… additionally provides that a controlled substance offense 'include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.'" *Campbell*, 22 F.4th 438, 441, *quoting* U.S.S.G. §4B1.2, appl. n.1 (2018) ("'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.")

This Court employs the categorical approach to determine whether a conviction under an asserted predicate offense statute constitutes a "controlled substance offense" or a "crime of violence" as defined by the Sentencing Guidelines. *Campbell*, 22 F.4th at 441, *citing United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020). This Court has previously

explained, we must first determine the generic, contemporary meaning of the crime, which will typically correspond to the sense in which the term is now used in the criminal code of most states. The generic definition may be derived from the Model Penal Code, modern criminal law textbooks, or from a survey of the states' definitions of the crime." *United States v. Simmons*, 917 F.3d 312, 317 (4th Cir. 2019) (quotations and citations omitted). In *Campbell*, the Court determined prior convictions cannot support a career offender enhancement if the least culpable conduct criminalized by the predicate offense statute does not qualify as a "controlled substance offense." *Campbell*, 22 F.4th at 441, *citing United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012). This inquiry focuses on the elements of the offense rather than the Defendant's specific conduct in committing the offense.

The courts are directed "to take commentary to the Sentencing Guidelines as authoritative unless doing so would violate the Constitution or a federal statute, or would be a plainly erroneous or inconsistent reading of the Sentencing Guideline itself." *United States v. Campbell*, 22 F.4th 438, 442 (4th Cir. 2022) (internal quotations omitted), citing *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 123 L.

10

Ed. 2d 598 (1993). The Supreme Court instructed "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act [18 U.S.C. §§3553(a)(4), (b)] itself commands compliance with the guideline." *Stinson,* 508 U.S. at 43, 113 S. Ct. at 1918, 123 L. Ed. 2d at 607.

There is a crucial difference between the text of U.S.S.G. §4B1.2(b) which "does not state or in any way indicate that aiding and abetting, conspiracy, and attempt are 'controlled substance offense[s]'" and the text of the Sentencing Commission's Commentary to that Guideline "expressly states that these crimes are 'controlled substance offense[s].'" *Campbell*, 22 F.4th at 442 (comparing U.S.S.G. § 4B1.2(b), with U.S.S.G. §4B1.2 appl. n.1). This Court found that because the Guidelines and the commentary define "the same key term in different ways, such that one definition includes a category that the other definition does not," the definition of "controlled substance offense" in U.S.S.G. §4B1.2(b) and that in the Commentary "are not just inconsistent, but are plainly so." *Id.*, 22 F.4th at 444, citing *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 168-69, 127 S. Ct. 2339, 168 L. Ed. 2d 54 (2007) and *Stinson.*

11

Sarratt's predicate offenses are not controlled substance offenses; they were Common Law Robbery and Robbery with Dangerous Weapon, under North Carolina law, which the Sentencing Court determined were crimes of violence.  A "crime of violence" is defined by the Sentencing Guidelines, U.S.S.G. §4B1.2(a) (2018), as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. §5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

The guidelines contain both a broad definition ("elements clause") and a defined list of particular offenses ("enumerated offense clause").

> 2.    *The Defendants prior conviction for Robbery under the enumerated offense clause*

The term 'crime of violence' includes in a list of enumerated crimes as set forth in U.S.S.G. §4B1.2(a)(2). The enumerated offenses are "murder, voluntary manslaughter, kidnapping, aggravated assault, a forceable sex offense, robbery, arson or extortion. U.S.S.G. §4B1.2 defines several enumerated offenses, but leaves "robbery" undefined. Robbery was added to the list by the Commission with amendment 798, effective

on August 1, 2016.  U.S.S.G., Amd. 798 (2016) ("The revised list is based on the Commission's consideration of public hearing testimony, a review of extensive public comment, and an examination of sentencing data relating to the risk of violence in these offenses and the recidivism rates of career offenders."). That amendment also removed a residual clause and consolidated the list of enumerated offenses at §4B1.2, where prior to the amendment, the list was set forth in both §4B1.2(a)(2) and the commentary at Application Note 1.

In *United States v. Gattis*, 877 F.3d 150 (4th Cir. 2017), a prior North Carolina common law robbery conviction was reviewed to determine whether "robbery" categorically qualified as used within U.S.S.G. §4B1.2(a)(2).  In *Gattis*, this Court observed "The distinct crime of 'larceny from the person' becomes 'robbery' in the generic sense only when the offender takes property by using force or by threatening immediate physical harm". *Id.*, at 157.  The Court contrasted the generic contemporary meaning of robbery to North Carolina robbery, stating "robbery in its generic sense is the misappropriation of property under circumstances involving immediate danger to the person, and one such circumstance is when property is taken from a person or his presence by

13

means of force or putting in fear". *Id.*, at 158.  North Carolina defines robbery as the "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 292 S.E.2d 264, 270 (1982).

In *Gattis*, the Fourth Circuit found "North Carolina common law robbery is thus subsumed within – and is a categorical match with – generic robbery" and "North Carolina common law robbery qualifies as 'robbery' as that term is used in U.S.S.G. §4B1.2(a)(2)." *Gattis*, 877 F.3d at 158, 160.

There is a difference between the elements of North Carolina law and the generic elements which was not addressed by the *Gattis* court. North Carolina allows conviction for robbery based on intimidation. *State v. Glover*, 233 N.C. App. 788, 759 S.E.2d 711 (2014) (In North Carolina, violence or fear necessary to accomplish the taking for purpose of common law robbery has been repeatedly held to include intimidation); *State v. Sipes*, 233 N.C. 633, 635, 65 S.E.2d 127, 128(1951) (robbery can be accomplished by violence, intimidation or putting in fear);  *State v. McDonald*, 130 N.C. App. 263, 267, 502 S.E.2d 409, 412 (1998) (holding "fear or intimidation is a material fact in issue regarding the offense of

armed robbery"). The common law definition requires a "means of force or putting in fear," while North Carolina requires force, fear, or *intimidation*. This raises an issue as to whether the elements of robbery under North Carolina law are a "categorical match" with the elements of generic robbery and whether U.S.S.G. §4B1.2 is satisfied.

The inconsistent language issue of the Commentary in *Campbell* does not arise, even if North Carolina robbery is not a categorical match. One recent case interpreting *Campbell* determined that it did not apply because "North Carolina separately criminalizes attempt offenses from drug offenses." *United States v. Miller*, 75 F.4th 215, 229 (4th Cir. 2023). Much like the controlled substances offenses in *Miller*, attempted common law robbery is separate offenses under N.C.G.S. §14-2.5 with different punishments under North Carolina law.

While this Court has previously held that common law robbery in North Carolina is a categorical match for generic robbery, the Defendant argues that his North Carolina common law robbery conviction does not qualify as crime of violence predicate offenses for Career Offender determination pursuant to U.S.S.G. §4B1.1.

15

> 3.    *The Defendants predicate convictions for robbery with do not qualify under the elements clause*

Because U.S.S.G. §4B1.2(a) requires that a predicate offense "has an element the use, attempted use, or threatened use of physical force against the person of another," the Defendant argues that a North Carolina statutory offense of robbery with a deadly weapon in violation of North Carolina General Statutes Section 14-87 does not constitute a predicate violent felony because the offense does not require the use, attempted use, or threatened use of physical force.

In North Carolina law, Robbery with Dangerous Weapon is statutorily defined under N.C.G.S. §14-87(a), which states:

> Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

"The elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other

dangerous weapon;[3] (3) whereby the life of a person is endangered or threatened." *State v. Curry*, 203 N.C. App. 375, 393, 692 S.E.2d 129, 142 (2010). *State v. Cole*, 199 N.C. App. 151, 156, 681 S.E.2d 423, 427 (2009).

This statute creates several issues as a predicate offense. First, robbery with a dangerous weapon is not a categorical match for common law robbery in the enumerated offense clause. U.S.S.G. §4B1.2(a)(2) Unlike common law robbery which separates an attempt from a completed offense, the statute makes attempted armed robbery punishable as armed robbery. *Curry*, 375 N.C. App. at 393- 692 S.E.2d at 142–44 (2010) (Because this offense includes attempts, all of the elements of larceny need not have been completed for an armed robbery to have occurred.) Common law robbery is a lesser-included offense of armed robbery but not of attempted armed robbery. *State v. White*, 322

---

[3] Despite the statute referencing possession of a dangerous weapon, the North Carolina courts have interpreted this provision narrowly. The mere possession of a firearm during the course of taking property is not a violation of N.C. Gen. Stat. Sec. 14-87(a), *State v. Gibbons*, 303 N.C. 484, 279 S.E. 2d 574 (1981). The firearm must be used to endanger or threaten the life of a person as that element is the essence of armed robbery. *State v. Covington*, 273 N.C. 690, 161 S.E. 2d 140 (1968). *State v. Gibbons*, 303 N.C. 484, 279 N.C. 574 (1981) (When a defendant testified that he used the butt of a shotgun to break through a robbery victim's door and then rested the shotgun against a wall during the robbery, the court found insufficient evidence of this element.)

N.C. 506, 516, 369 S.E.2d 813, 818 (1988). Therefore, the least culpable criminal conduct for robbery with a dangerous weapon under North Carolina law does not necessarily match the elements enumerated offense of common law robbery.

Second the application of the elements clause in U.S.S.G. §4B1.2(a)(1) to robbery with a dangerous weapon under North Carolina law creates an issue under *Campbell*.

The issue is not identical to the issue raised in *Campbell* but the reasoning is analogous. As with controlled substance offenses, the commentary to U.S.S.G. §4B1.2 defines "crimes of violence to "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. §4B1.2, appl. n.1 (2018). However, a significant difference in the elements clause defining crimes of violence clearly references "the use, attempted use, or threatened use of physical force against the person of another," while the controlled substance definition does not. *Compare* U.S.S.G. §4B1.2(a)(1) to U.S.S.G. §4B1.2(b). Because of this key difference, *Campbell* would only apply to a predicate crime of violence where the least culpable criminal conduct did not necessarily involve an element of the "the use, attempted use, or threatened use of

18

physical force against the person of another." An attempted predicate offense that did not require such conduct would invoke the plainly inconstant language of the Commentary. *Campbell*, 22 F.4th at 444.

Under the categorical approach, if the offense can be committed without satisfying the definition of crime of violence, then it is overbroad and not a categorical match. *Simmons*, 917 F.3d at 316-17. *United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017). *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990). In considering whether North Carolina statutory armed robbery satisfies the definition of "crime of violence," we look only to the elements of statutory armed robbery and not the particular facts of Mr. Sarratt's conviction. *Simmons*, 917 F.3d at 316-17. *Mathis v. United States*, 579 U.S. 500, 503, 136 S. Ct. 2243, 2248, 195 L. Ed. 2d 604 (2016).

The Fourth Circuit has previously held that the North Carolina offense of robbery with a dangerous weapon categorically qualifies as a "violent felony" under the ACCA's force clause. *United States v. Burns-Johnson*, 864 F.3d 313, 315, 320 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 461, 199 L. Ed. 2d 339 (2017). This Circuit relies on decisions evaluating whether an offense qualifies as an ACCA violent felony "interchangeably"

with decisions evaluating whether an offense qualifies as a Guidelines crime of violence. *United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013) (internal quotation marks omitted). This Court determined that North Carolina convictions for robbery with a dangerous weapon categorically qualify as a crime of violence under the force clause of U.S.S.G. § 4B1.2(a). *See United States v. Pittman,* 728 F. App'x 197, 199 (4th Cir. 2018) (*unpublished*).

However, Supreme Court's decision in *United States v. Taylor*, ___ U.S. ___, 142 S. Ct. 2015, 213 L. Ed. 2d 349 (2022) raises questions. While this decision affirmed an earlier decision by the Fourth Circuit, 979 F.3d 203 (4th Cir. 2020), *Taylor* rejected a broader view of a "threat of force" to include "a more objective or abstract risk" (e.g., "a critic might say that a prison board's decision to parole a particular felon 'threatens' community safety"). *Id.*, ___ U.S. at ___, 142 S. Ct. at 2023, 213 L. Ed. 2d at 359. As the Court explains, "[I]n the criminal law the word threat and its cognates usually denote a communicated intent to inflict physical or other harm on any person or on property." *Id.*, ___ U.S. at ___, 142 S. Ct. at 2022, 213 L. Ed. 2d at 359 (*quotations omitted*). The Court determined that the "threatened use of physical force against the person or property

of another" requires "a communicated threat." *Id.*, ___ U.S. at ___, 142 S. Ct. at 2023, 213 L. Ed. 2d at 360.  It requires proof "that the defendant communicated a threat to a second person, whether or not that individual is the target of the threat." *Id.*, ___ U.S. at ___, 142 S. Ct. at 2023, 213 L. Ed. 2d at 359.

The North Carolina Supreme Court has previously explained that "The question in an armed robbery case is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his life."  State v. Moore, 279 N.C. 455, 183 S.E. 2d 546 (1971). *State v. Pratt*, 161 N.C. App. 161 (2003) (There was sufficient evidence to support an armed robbery conviction when the victim testified that the defendant held an object that appeared to be a box cutter at his neck, even though the victim also testified that he did not feel that his life was threatened.)  North Carolina's standard for a threat to the victim is objective not subjective.

Under *Taylor*, "the use or the threatened use of a dangerous weapon where the life of a person is endangered or threatened" requires a "communicated intent to inflict physical or other harm on any person or

on property" by the Defendant "to a second person, whether or not that individual is the target of the threat." Black's Law Dictionary defines "Communication" as "[t]he interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." *Black's Law Dictionary*, 11th ed., at 348. The American Heritage College Dictionary similarly defines "communication" as "[t]he exchange of thoughts, messages, or information." *See American Heritage College Dictionary*, 3rd ed., p. 282. Unless a person's message is both transmitted by the person and received by another person, the person has not communicated. This requirement of transmittal and receipt of a threat for a crime of violence creates an issue under N.C.G.S. 14-87(a), which only requires the transmittal of a threat, but not necessarily that the threat is not received or understood by the victim or a third party.

This Court's earlier decisions that North Carolina convictions for robbery with a dangerous weapon categorically qualify as a crime of violence under the force clause of U.S.S.G. § 4B1.2(a) also predate the Court's decision in *Campbell*. Where a defendant commits a crime in North Carolina by objectively threatening the use of force without that threat being subjectively received or understood by the victim or a third

22

party, they could be convicted under the elements of robbery with a dangerous weapon. However, the victim or a third party's failure subjectively receive or understand the threat would yield an offense which would not be crime of violence under 4B1.2(a) and *Taylor*. Therefore, the Robbery with a dangerous weapon under North Carolina law is overly "overbroad and not a categorical match" as a crime of violence under 4B1.2(a).

The failure to complete the threat of violence to qualify as crime of violence under 4B1.2(a) would still be an "attempt" to threaten violence under the Commentary. However, because the Guidelines and the commentary define "the same key term in different ways, such that one definition includes a category that the other definition does not," the definition of "crime of violence" in U.S.S.G. §4B1.2(b) and that in the Commentary in U.S.S.G. §4B1.2, appl. n.1 "are not just inconsistent, but are plainly so." *See Campbell*, 22 F.4th at 444.

Applying the categorical approach, the least culpable conduct criminalized by N.C.G.S. §14-87(a) would not qualify as crime of violence predicate offense for Career Offender determination pursuant to U.S.S.G.

§4B1.1. Therefore, Mr. Sarratt does not meet the requirements for an enhancement as a career offender.

> **4.** *North Carolina's presumption prevents robbery with a dangerous weapon from being a crime of violence*

Under North Carolina law, when the evidence shows that the victim thought that the robber used a firearm or other dangerous weapon and no evidence to the contrary is presented, there is a mandatory presumption that the robber used a firearm or dangerous weapon that threatened or endangered the victim's life. The jury must, then, find that the robber used a firearm or dangerous weapon that threatened or endangered the victim's life. *State v. Thompson*, 297 N.C. 285, 289, 254 S.E. 2d 526, 528 (1979). *State v. Joyner*, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985). If, however, there is any evidence that shows the weapon in question was not dangerous, the mandatory presumption disappears and is replaced by a permissive inference, *Joyner*, 312 N.C. at 783, 324 S.E.2d at 844.

In practice by way of example, if a victim testifies that he or she was robbed with what appeared to be a handgun, the jury must presume that a dangerous weapon threatening or endangering the victim's life was used. However, if the defendant presents evidence showing that the

object used was a toy or otherwise not dangerous, the prosecution must prove that the object used was actually a handgun or other dangerous weapon and that the victim's life was endangered. *Thompson*; *Joyner*; *State v. Everette, 111 N.C. App. 775, 433 S.E.2d 802 (1993). See also State v. Marshall*, 188 N.C. App. 744, 656 S.E.2d 709 (2008) (the defendant's testimony that he did not possess a dangerous weapon did not require dismissal of the armed robbery charge; the victim's testimony that she believed that the defendant had a gun created a mandatory presumption that a dangerous weapon was used; the defendant's testimony required that the mandatory presumption disappear and be replaced by a permissive inference; the permissive inference was enough to survive a motion to dismiss.)

It is possible to convict a Defendant for robbery with a dangerous weapon when the weapon in question is actually a toy gun because of this presumption. By shifting the burden to the Defendant to disprove an essential elements of the offense (that he possessed, used, or threatened use of a firearm or other dangerous weapon that endangers or threatens the life of a person), it is entirely possible that Defendant who exercises his Constitutional right to remain silent will be presumed to have

committed robbery with a dangerous weapon without the actual threatened use of physical force against the person or property of another. Applying North Carolina law to the least culpable actions by a defendant, a robbery with a toy gun could yield a conviction for robbery with a "dangerous weapon" without necessitating "the use, attempted use, or threatened use of physical force against the person of another."

Again, conviction under this presumption could be saved by the commentary, but that is not possible after *Campbell*. Therefore, the presumption causes the least culpable conduct criminalized by N.C.G.S. §14-87(a) not to qualify as crime of violence predicate offense for Career Offender determination pursuant to U.S.S.G. §4B1.1.

> 5. *North Carolina's Robbery with a dangerous weapon does not require* mens rea *so it is not a crime of violence*

The Defendant argues that North Carolina statutory armed robbery does not have sufficient culpability to constitute a violent felony because the offense does not explicitly require that a person intentionally use or threaten to use force. *Mens Rea* is ordinarily required to separate innocent conduct from criminal conduct. *Elonis v. United States*, 575 U.S. 723, 723, 135 S. Ct. 2001, 2002, 192 L. Ed. 2d 1, 6 (2015). The only *mens rea* requirement specified in N.C.G.S. 14-87 is the intent to deprive

the victim of her property, and there is no statutory language articulating a *mens rea* requirement regarding the use or threatened use of force. Without *mens rea* the offense does not satisfy "active employment" of such force, rather than reckless, negligent, or accidental conduct. *See Leocal v. Ashcroft*, 543 U.S. 1, 9, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004). However, the Fourth Circuit has previously held that "the intentional taking of property, by means of violence or intimidation sufficient to overcome a person's resistance, must entail more than accidental, negligent, or reckless conduct." *United States v. Doctor*, 842 F.3d 306 (4th Cir 2016); *United States v. Burns-Johnson*, 864 F.3d 313, 319 (4th Cir. 2017). *But see United States v. Dixon*, 805 F.3d 1193, 1197-98 (9th Cir. 2015) (holding that California statutory robbery did not qualify as a violent felony under the ACCA, because the offense could be committed through the accidental use of force where a defendant stole a car out of a parking garage and accidentally struck the car's owner while fleeing.)

**D.** **The timing of the Defendant' predicate conviction should prevent their inclusion under U.S. Sentencing Guidelines Manual §4A1.2(e) (2018).**

Like application of *Campbell*, the application of Guideline §4A1.2(e) is also problematic. There is a significant question whether the

27

Defendant's predicate convictions were properly counted under Guideline §4A1.2(e) due to their chronological progression.

The Guidelines define the term "two prior felony convictions" to mean:

> (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense…, and
> 2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c).

§4B1.2(c). In other words, any sentence receiving criminal history points counted separately can qualify as a predicate offense.

There is no question that Mr. Sarratt has committed the current drug trafficking offense after more than two felony convictions. The section above addresses whether these represent convictions qualify as crimes of violence. As this Court explained, "Under the Guidelines, the existence of two prior felony convictions alone is not dispositive; the defendant must also have at least two prior sentences for those convictions." *United States v. Davis*, 720 F.3d 215, 217 (4th Cir. 2013). The question addressed in this section is whether the Defendant's prior convictions yielded two prior sentences that counted under §4A1.1.

While the Guidelines uses the term "career offender" the inclusion of offenses as predicates is governed by chorological limitations. The definitions and instructions for computing criminal history in §4A1.2 are applicable to the counting of convictions under §4B1.1. U.S.S.G. § 4B1.2, appl. N.1. The Guidelines describe the requirements for a conviction to be counted as a prior sentence. Section 4A1.2(a)(1) of the Guidelines limits a prior sentence to "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." The Guidelines continue:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. §4A1.2(a)(2). The Commentary repeats that "because predicate offenses may be used only if they are counted 'separately' from each other (see §4B1.2(c)), no more than one prior sentence in a given single

sentence may be used as a predicate offense." U.S.S.G. §4A1.2 appl. N.3(a).

The timing of the Defendant's sentence and imprisonment also determines whether a conviction can be counted as a prior sentence. As the Guidelines explain:

> (1)　Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

> (2)　Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

> (3)　Any prior sentence not within the time periods specified above is not counted.

> (4)　The applicable time period for certain sentences resulting from offenses committed prior to age eighteen is governed by §4A1.2(d)(2).

U.S.S.G. §4A1.2(e). The application notes to that section also specifically provide that "sentence of imprisonment" focuses on "the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 cmt. n.2. The commentary also explains, "the term 'commencement of the

instant offense includes any relevant conduct. U.S.S.G. §4A1.2 appl. N.8. *See also* §1B1.3 (Relevant Conduct).

In other words, a sentence is counted as a predicate offense if an offense exceeding 13 months was imposed or was served within fifteen years of the defendant's first act of relevant conduct. A sentence of any length is also counted if it was imposed within ten years of the defendant's first act of relevant conduct. The indictment indicates that the first act of the conspiracy occurred "[o]n or about 2018," but has no specific date until January 3, 2020. JA22. The presentence investigation report suggests that Mr. Sarratt's relevant conduct first occurred in 2019 (JA180 at ¶12, 13, and 14) or 2017 (JA180 at ¶15). The first specific date of relevant conduct is also January 3, 2020. JA181 at ¶16.

Specific offenses are outlined as predicate offenses in the presentence report, but the Defendant has several additional prior convictions. For the purposes of inclusiveness, all are discussed below.

    *1.*   *Specific Offenses*

The Defendant's prior convictions for crimes of violence qualifying the Defendant as a career offender under U.S.S.G. §4B1.1 are listed as North Carolina Common Law Robbery, from July 26, 2002; and Robbery

31

with Dangerous Weapon from July 2, 2003 and from July 16, 2003.[4] JA185, at ¶44; JA186, at ¶46.   These offenses and the Defendant's additional prior offenses are examined specifically below to determine if the career offender guideline should apply.   Despite the volume of prior convictions, Mr. Sarratt does not have two prior convictions under U.S.S.G. §4B1.1.

> a.    *First Offenses for Breaking and Ending in 2001*

**Offenses:** Breaking and or Entering (01 CRS 56918-01);
    Larceny After Breaking & Entering (01 CRS 56918-02)
**Date of Offense:** 2001
**Date of Arrest:** 3/26/2002
**Date of Conviction:** 5/8/2002 (consolidated)
**Sentence Completed:** 5/8/2002
JA187, ¶53 (1), (2)

At the age of seventeen, Mr. Sarratt was convicted of Breaking and Entering and Larceny after Breaking and Entering in the Superior Court of Gaston County, North Carolina. JA187, at ¶53.   Breaking and Entering is a misdemeanor. N.C.G.S. §14-54(b).   Larceny after Breaking

---

[4]    As explained below, the two offenses of Robbery with Dangerous Weapon committed on June 9, 2003, and on June 27, 2003 are not counted separately under the provisions of §4A1.1(a), (b), or (c) and can provide only one predicate offense for Career Offender analysis. *Supra.   See Davis*, 720 F.3d at 217.

and Entering is felony. N.C.G.S. §14-54(a).  On May 8, 2002, he received 5-8 months imprisonment suspended for 36 months.

Pursuant to the Guidelines, for offenses committed before the age of eighteen, offenses are counted where either (1) the Defendant was "convicted as an adult and received a sentence of imprisonment exceeding one year and one month;" (2)(a) the defendant was convicted as an adult or as a juvenile and sentenced "to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense," or (2)(b) the defendant was convicted as an adult or as a juvenile "sentence imposed within five years of the defendant's commencement of the instant offense." U.S.S.G. §4A1.2(d).  Mr. Sarratt committed this offense under 18 and was sentenced as an adult.  He was not released from his confinement "of at least sixty days" for the offense "within five years of his commencement of the instant offense." U.S.S.G. §4A1.2(d)(2)(C).  Therefore, it could not be a predicate offense.

### b.    *Firearms Offenses (2002)*

**Offenses:** Possession of a Firearm by Felon (02 CRS 58601)
              Carrying Concealed Gun (02 CRS 9810-02)
**Date of Offense:** Unknown
**Date of Arrest:** 5/25/2002

**Date of Conviction:** 2/27/2003
**Sentence Completed:** 5/22/2005
JA187, ¶54

In Gaston County Superior Court, the Defendant was convicted of three additional offenses committed while he was seventeen described in the next two subsections. He was arrested on May 25, 2002, for the offenses of Possession of a Firearm by a Felon and Carrying a Concealed Gun ("Firearms Offenses") JA187, ¶54. The date of the offense was not included in the record. Possession of a Firearm by a Felon is a felony. N.C.G.S. §14-415.1(a). First offense for Carrying a Concealed Weapon is a misdemeanor. N.C.G.S. §14-269(c).

On February 27, 2003, he received a sentence of 13-16 months, suspended for 36 months on the Firearms Offenses, consolidated with the contemporaneous Common Law Robbery. After a revocation, service of the firearms sentence was completed on May 22, 2005. While this offense was committed before the Defendant reached the age of eighteen, the sentence was greater than 13 months and the Defendant was incarcerated for this offense within fifteen years of the first act in commission of the offense.

34

This Court has previously determined that under the categorical approach "The danger inherent in the mere possession of a firearm is, in many cases, too highly attenuated to qualify the offense as a *per se* 'crime of violence.'" *United States v. Johnson*, 953 F.2d 110, 115 (4th Cir. 1991). Except where the elements of the offense require an unlawful possession of a firearm described in 26 U.S.C. §5845(a), such simple possession would not *per se* be a crime of violence.

### c.    *Common Law Robbery (2002)*

**Offense:** Common Law Robbery (02 CRS 62377)
**Date of Offense:** 7/26/2002
**Date of Arrest:** 7/26/2002
**Date of Conviction:** 2/27/2003
**Sentence Completed:** 4/22/2004
JA188, ¶55

He was arrested on July 26, 2002, for the offense of Common Law Robbery. (JA188, at ¶55). On February 27, 2003, he received a consolidated sentence of 15-18 months for Common Law Robbery consolidated with the contemporaneous Firearms Offenses. (JA188, at ¶ 55). Common Law Robbery is a felony. N.C.G.S. 14-87.1. After a revocation, service of the robbery sentence was completed on April 22, 2004.

This offense was committed before the Defendant reached the age of eighteen, and the sentence was greater than 13 months. However, there is a factual question of whether the Defendant was incarcerated for this offense within fifteen years of the first act in commission of the offense. The indictment for Count One indicated that the conspiracy commenced in or about 2018, but it is silent as to the exact date of the Defendant's commencement of the instant offense. The Court never made a factual finding as to the date of the Defendant's commencement in the conspiracy. Based on the Statement of Relevant Conduct, confidential informants alleged that they purchased controlled substances during 2019 or prior, but the Statement gives no specific date prior to January 3, 2020. For the Career Offender guideline to be imposed, the Government needed to show that the Defendant commenced the instant offense prior to March 21, 2019. That evidence is not in the record. This issue was not considered by the Court at sentencing, who used the common law robbery as a predicate offense. Therefore, the sentence should be reversed and remanded for further factual findings.

### d.  First Aggravated Robbery (2002)

**Offense:**  First Degree Burglary (03 CRS 59453-01)
      Robbery with Dangerous Weapon (03 CRS 59453-02)
      Robbery with Dangerous Weapon (03 CRS 59454-01)
**Date of Offense:** 6/9/2003
**Date of Arrest:** 7/2/2003
**Date of Conviction:** 3/4/2004
**Sentence Completed:** 6/15/2011
JA 189-JA190, ¶56 (6),(7),(8)

**Offense:**  Possession of Firearm by Felon (03 CRS 59504-01)
**Date of Offense:** 6/9/2003
**Date of Arrest:** 7/2/2003
**Date of Conviction:** 3/4/2004
**Sentence Completed:** 11/20/2012
JA 189-JA190, ¶56 (11)

While on probation at the age of 18, Mr. Sarratt was arrested on July 2, 2003, for the offenses of First-Degree Burglary, two counts of Robbery with a Dangerous Weapon ("First Robbery with a Dangerous Weapon"), and Possession of a Firearm by a Felon committed on June 9, 2003. JA189-JA190, at ¶56.  He was also arrested for Possession of Firearm by Felon. *Id.*  Both of these robberies occurred during the burglary, when personal property was taken from occupants of the home. *Id.* The possession of the firearm occurred at the same incident. *Id.*  All three offenses are felonies. N.C.G.S. §§14-52, 14-87(a), 14-415.1(a).

37

On March 4, 2004, while serving a sentence for his prior offenses, Mr. Sarratt was convicted of these offenses (two counts of First-Degree Burglary, and three counts of Robbery with a Dangerous Weapon,) and received a consolidated sentence of 85-111 months of active incarceration with a suspended sentence. *Id.* On the same date, he was convicted of one count of Possession of a Firearm by a Felon with a separate sentence of 13-16 months of incarceration suspended with 36 months of probation following the Burglary and First Robbery with a Dangerous Weapon. *Id.* The Defendant was released from his Burglary/Robbery sentence on June 15, 2011, and placed on probation.

### e.  *Second Aggravated Robbery (2002)*

**Offenses:**  First Degree Burglary (03 CRS 60217-01)
       Robbery with Dangerous Weapon
**Date of Offense:** 6/27/2003
**Date of Arrest:** 7/16/2003
**Date of Conviction:** 3/4/2004
**Sentence Completed:** 6/15/2011
JA 190-191, ¶57 (1), (2)

The Defendant was also arrested on July 16, 2003, for a separate offense of First-Degree Burglary and Robbery with a Dangerous Weapon ("Second Robbery with a Dangerous Weapon"), which occurred on June 27, 2003. JA190-191, at ¶57. Both offenses are felonies. G.S. §§14-52, 14-

38

87(a).  On March 4, 2004, while serving a sentence for prior offenses, he was convicted of these offenses (two counts of First-Degree Burglary, three counts of Robbery with a Dangerous Weapon, and one count of Possession of a Firearm by a Felon) and received a sentence of 85-111 months of active incarceration with a suspended sentence, which was consolidated with the First Robbery with a Dangerous Weapon. *Id.*  The Defendant was released from his Burglary/Robbery sentence on June 15, 2011, and placed on probation. *Id.*

The convictions for the First Robbery with Dangerous Weapon from June 9, 2003, and for the Second Robbery with Dangerous Weapon on June 27, 2003, are listed together as the second predicate crime of violence qualifying the Defendant as a Career Offender under U.S.S.G. §4B1.1.  JA 185, at ¶44; JA 186, at ¶49.

Because the First Robbery with Dangerous Weapon from June 9, 2003, and for the Second Robbery with Dangerous Weapon on June 27, 2003 shared a single sentence they can only be a single predicate offense. *Davis,* 720 F.3d at 217.  The Guidelines also dictate that this is a single offense. U.S.S.G. §4B1.2(a)(2) (If sentences are imposed on a single day, the sentences are treated as a single sentence.)

39

### f. *Firearms and Arrest Offenses (2011)*

**Offense:**   Possession of Firearm by Felon (11 CRS 64158)
**Date of Offense:** 10/5/2011
**Date of Arrest:** 10/5/2011
**Date of Conviction:** 2/10/2012
**Sentence Completed:** 7/2/2013
JA191, ¶58

**Offense:**   Carrying Concealed Gun (11 CRS 64159)
           Assault Government Official (11 CRS 64160-01)
           Resisting Public Officer (11 CRS 64160-02)
**Date of Offense:** 10/5/2011
**Date of Arrest:** 10/6/2011
**Date of Conviction:** 2/10/2012
**Sentence Completed:** 7/2/2013
JA191, ¶59 (1), (2), (3)

On October 5, 2011, the Defendant was charged with Possession of

a Firearm by a Felon. JA191, at ¶58.

On October 6, 2011, the defendant was charged with Carrying a

Concealed Gun, Assault on a Government Employee, and Resisting a

Public Officer. JA191, at ¶59.  Possession of a Firearm by a Felon is a

felony. N.C.G.S. §14-415.1(a).  Assault on a government employee and

Resisting Public Officer are misdemeanors. N.C.G.S. §§14-33(c), 14-223.

The Second and subsequent conviction for Carrying a Concealed Gun is

a felony, if it is pled in the charging instrument.  N.C.G.S. §§14-269(c),

15A-928. The record is silent as to whether the Defendant was charged with Felonious Carrying a Concealed Gun.

On February 10, 2012, Mr. Sarratt was convicted of the charges of Possession of a Firearm by a Felon, Carrying a Concealed Gun, Assault on a Government Employee, and Resisting a Public Officer. JA191, at ¶¶58, 59. They were consolidated, and he was sentenced to 21-26 months imprisonment. *Id.* On July 2, 2013, Mr. Sarratt was released from incarceration. *Id.*

As a result of this offense, the post release supervision from the consolidated sentence for First Robbery with Dangerous Weapon and Second Robbery with Dangerous Weapon was violated on October 10, 2011, and he was sentenced to complete an additional nine months of incarceration. JA189, at ¶56. On February 10, 2012, his probation from the 2003 charge of Firearms Possession was revoked and he was ordered to complete a suspended sentence of 13-16 months for the 2003 charge. On July 2, 2013, Mr. Sarratt was released from incarceration.

None of these offenses qualify as a felony crime of violence.

### g.    *Remaining Offenses and Analysis*

The remaining offenses are inapplicable to this discussion.  The 2014 conviction for speeding is an infraction (JA192, at ¶60), the 2015 conviction for possession of drug paraphernalia (JA192, at ¶61) does not qualify as a felony controlled substance offense, and 2017 conviction for driving while impaired is neither a felony controlled substance offense or crime of violence.

Based on a review of the Defendant's entire record, the only possible offenses which could serve as predicate crimes of violence are the offenses referenced by the presentence investigation report.  There is uncertainty about when the Defendant commenced the current offense, and the court never determined this date.  As a result, the imprisonment for the offense for Common Law Robbery may have been completed more than 15 years prior, preventing the offense from being a predicate sentence.  Because of these issues, the sentence should be reversed and sent back to the district court for additional fact finding.

E. **The errors made in applying the career offender enhancement in light of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S. Sentencing Guidelines Manual §4A1.2(e) (2018) were plain.**

To the extent that Mr. Sarratt's counsel did not specifically to these issues below, the district court plainly erred in calculating an advisory Guidelines range for Mr. Sarratt for the foregoing reasons. See Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731–32, 113 S. Ct. 1770, 1776-77, 123 L. Ed. 2d 508, 518 (1993). To establish plain error, the appellant must show that (1) an error occurred; (2) the error was plain (i.e. clear or obvious); and (3) the error affected the appellant's substantial rights, which means he must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. U.S.*, 578 U.S. 189, 194, 136 S. Ct. 1338, 1343, 194 L. Ed. 2d 444, 452 (2016) (citation and internal quotation marks omitted); see also *Olano*, 507 U.S. at 732, 113 S. Ct. at 1776-77, 123 L. Ed. 2d at 518. If these conditions are met, this Court should exercise its discretion to correct the plain error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S. Ct. at 1779, 123 L. Ed. 2d at 521 (brackets omitted). *See United States v. Maxwell*, 285 F.3d 336, 342

(4th Cir. 2002) (noting that error is plain "if the settled law of the Supreme Court or this circuit establishes that an error has occurred") (citation omitted); *see also Molina-Martinez*, 578 U.S. at 199, 136 S. Ct. at 1346, 194 L. Ed. 2d at 455 ("A district court that improperly calculates a defendant's Guidelines range, for example, has committed a significant procedural error.") (citation, internal quotation marks, and brackets omitted); *United States v. Ford*, 88 F.3d 1350, 1356 (4th Cir. 1996) (finding plain and prejudicial error where the erroneous addition of points to the defendant's criminal history score caused the defendant "to be sentenced at a more severe guideline range").

As the Supreme Court explained, "In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome. And, again in most cases, that will suffice for relief if the other requirements of Rule 52(b) are met." *Molina-Martinez*, 578 U.S. at 200, 136 S. Ct. at 1346, 194 L. Ed. 2d at 455-56 (determining that defendant showed reasonable probability of different outcome with a sentencing range variance).

44

As the Supreme Court has recognized, "when a Guidelines range moves up or down, offenders' sentences [tend to] move with it." *Peugh v. United States*, 569 U.S. 530, 531, 544, 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013) (noting there is "considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing the sentences imposed by judges"). The Guidelines serve

> as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence. It follows, then, that in most cases the Guidelines range will affect the sentence. When that is so, a defendant sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under the correct range. That probability is all that is needed to establish an effect on substantial rights for purposes of obtaining relief under Rule 52(b).

*Molina-Martinez*, 578 U.S. at 204 (noting "the real and pervasive effect the Guidelines have on sentencing" as "[i]n most cases district courts continue to impose "either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Id.* at 199). In *Molina-Martinez*, even though the defendants' ultimate sentences fell within what would have been the correct advisory Guidelines range, the Supreme Court nevertheless held that the defendants' substantial rights had been affected, because there was at

45

least a reasonable probability that the district court would have imposed a different sentence had it relied on the correct advisory Guidelines range. 578 U.S. at 200. This Court held likewise in *United States v. Garcia-Lagunas*, 835 F.3d 479, 497 (4th Cir. 2016).

"[S]entencing a defendant at the wrong guideline range seriously affects the fairness, integrity, and public reputation of the judicial proceedings." *Ford*, 88 F.3d at 1356. This is true especially "when [resentencing] could potentially lead to a sentence reduction." *Garcia-Lagunas*, 835 F.3d at 497 ("'[T]hree years of a man's life is not a trifling thing'") (quoting *Ford*, 88 F.3d at 1356). Applying an improper sentence poses a great threat to the fairness, integrity, and public reputation of judicial proceedings.

## CONCLUSION

Mr. Sarratt argues that his sentence should be vacated because the district court failed to properly apply the career offender enhancement in light of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and U.S. Sentencing Guidelines Manual §4A1.2(e) (2018). The *Campbell* decision prevents the finding that the sentences for Robbery and Robbery with a Dangerous Weapon are crimes of violence. The district court further

failed to find sufficient facts for both prior predicate offenses under U.S.S.G. §4A1.2(e), which restricts the interval of prior predicate offenses.

RESPECTFULLY SUBMITTED THIS the 6th day of November, 2023.

/s/ James W. Kilbourne, Jr.
JAMES W. KILBOURNE, JR.

Allen Stahl & Kilbourne, PLLC
Twenty Town Mountain Road
Asheville, NC 28801
(828) 254-4778
(828) 254-6446 fax
Jamesk@asklawnc.com
Appointed Counsel for the Defendant/Appellant

47

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*9,108*] words.

[   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.   This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century Schoolbook*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated:  November 6, 2023          /s/ James W. Kilbourne, Jr.
                                  *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 6th day of November, 2023, I caused this Supplemental Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, NC 28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 6th day of November, 2023, I caused a copy of the Sealed Volume of the Joint Appendix to be served on CD, via FedEx, upon counsel for the Appellee, at the above address.

/s/ James W. Kilbourne, Jr.
*Counsel for Appellant*
